## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

(To be supplied by the court)

**F I L E D**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**MAR 1 6 2012**

**GREGORY C. LANGHAM**
CLERK

WADE COLE _____, Applicant,

v.

TOM CLEMENTS _____, Respondent.
(Name of warden, superintendent, jailer, or other custodian)

## APPLICATION FOR A WRIT OF HABEAS CORPUS
## PURSUANT TO 28 U.S.C. § 2241

### A. PARTIES

1. Wade Cole   DOC #114016   P.O. Box 2000 Burlington, CO   80807
   (Applicant's name, prisoner identification number, and complete mailing address)

2. Tom Clements, Exec. Dir., CDOC   2862 S. Circle Dr., Colo.Springs
   (Respondent's name and complete mailing address)   CO   80906

3. If you are not confined in a prison, jail, or other correctional facility, explain how you are in custody:

   _____

4. If you are confined in a prison, jail, or other correctional facility but the named respondent is not the warden, superintendent, or jailer at the prison, jail, or correctional facility in which you are confined, explain how the respondent is your custodian:

   _____

(Rev. 9/02/04)

## B. NATURE OF THE CASE

**BRIEFLY** state the background of your case.  If more space is needed to describe the nature of the case, use extra paper to complete this section.  The additional allegations regarding the nature of the case should be labeled "B. NATURE OF THE CASE."

Please see attached pages

## C. CLAIMS

State concisely every claim that you wish to assert in this action.  For each claim, specify the right that allegedly has been violated and state all supporting facts that you consider important. You do not need to cite specific cases to support your claim(s).  If you need additional space to describe any claim or to assert additional claims, use extra paper to continue the claim or to assert the additional claims.  Identify clearly any additional pages that you attach to this form.

CAUTION:  In order to proceed in federal court, you ordinarily must exhaust administrative and/or state remedies for each claim that is asserted in this action.

1.    Have you exhausted administrative and/or state
      remedies for each claim asserted in this action?  XX__ Yes ___ No  (CHECK ONE)

2.    If you answered "No" to question 1., list the claims
      for which you have not exhausted administrative
      and/or state remedies and explain why:    _____

      _____

      _____

(Rev. 9/02/04)                            2

3.    Claim One:    <u>Bill Of Attainder</u>

A.    Supporting facts:    See attached pages, beginning page 4

B.    Explain the steps you have taken to exhaust administrative and/or state remedies for this claim (attach proof of exhaustion, if available):

Claim was originally filed in state district court and was timely appealed to the Colorado Supreme Court

4.    Claim Two:    <u>Sentence Is Impossible To Serve</u>

A.    Supporting Facts:    See attached pages, beginning page 18

B.    Explain the steps you have taken to exhaust administrative and/or state remedies for this claim (attach proof of exhaustion, if available):

Claim was originally filed in state district court and was timely appealed to the Colorado Supreme Court

(Rev. 9/02/04)                          3

5.    Claim Three:  <u>The Sentence Is Being Executed Illegally</u>

    A.   Supporting facts: See attached pages, beginning page 22

    B.   Explain the steps you have taken to exhaust administrative and/or state remedies for this claim (attach proof of exhaustion, if available):

        Claim was originally filed in state district court and was timely appealed to the Colorado Supreme Court

## D. PRIOR APPLICATIONS

1.    Have you filed any prior action in federal court in which you raised or could have raised the claims raised in this action?    \_\_\_ Yes  <u>xx</u> No  (CHECK ONE)

2.    If you answered "Yes" to question 1., give the following information for each prior federal court action challenging the execution of your sentence.

    A.   Name and location of court: _____

    B.   Case number: _____

    C.   Type of proceeding: _____

    D.   List the claims raised: _____

(Rev. 9/02/04)                4

E.    Were the claims in this
action actually asserted in
the prior action?                    ___ Yes ___ No  (CHECK ONE)

F.    Were the claims in this
action available to be
asserted in the prior action?    ___ Yes ___ No  (CHECK ONE)

G.    Date and result (attach a
copy of the decision if
available):                          _____

## E. REQUEST FOR RELIEF

I request the following relief: Because Mr. Cole has shown that the Sex
Offenders Lifetime Supervision Act is a Bill of Attainder in
violation of the United States Constitution and is otherwise
unconstitutional in many other ways as well as being impossible
to serve, he asks that his sentence be voided and he be
released as he has served the entire punishment protion of his
sentence.

## DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury that I am the applicant in this action, that I have read
this application, and that the information in this application is true and correct.  *See* 28
U.S.C. § 1746; 18 U.S.C. § 1621.

Executed on    14 Mar. 2012
                (Date)

_____
        (Applicant's Original Signature)

(Rev. 9/02/04)                    5

## B. NATURE OF THE CASE

This case is in the nature of a habeas corpus filed in the Garfield County District Court on Feb. 8, 2010, then refiled on May 4, 2010 when the District Court informed Mr. Cole it did not receive the original filing.   The district court dismissed the entire motion summarily without ruling on the merits of the claims.

Timely notice of appeal was made in the Colorado Supreme Court.   After the briefing schedule was issued, Mr. Cole timely filed his opening brief.   He then submitted a motion for default judgment two weeks after the answer brief was due.   The state then belatedly filed for an extension of time claiming as cause that, as with the district court, the mail was never received. The motion for default was denied and the extension granted.   On Aug. 2, 2011, the Colorado Supreme Court affirmed the ruling of the Garfield County District Court without issuing an opinion on the merits of the claims.

The claims presented in Mr. Cole's habeas corpus concern constitutional violations of the 1998 Sex Offender's Lifetime Supervision Act (the 1998 Act), challenging it as an unconstitutional bill of attainder, violating Mr. Cole's procedural and substantive due process rights by not meeting the requirements of **Specht v. Patterson**, 386 U.S. 605 (1967), being cruel and unusual punishment, and other constitutional violations.   Through state exhaustion, the state courts have evaded the opportunity to rule on the merits of the claims, even though the questions were fairly and directly put and briefed by Mr. Cole at both the district court and Colorado Supreme Court levels.

Mr. Cole claims that the state courts' refusal to rule on the claimed constitutional violations and the state's failure to follow it's own procedures are additional due process violations that entitle him to release, as they violate the fundamental fairness with which the gov-

1

ernment is required by the U.S. Constitution to treat those under it's jurisdiction and effectively suspends the Writ of Habeas Corpus unconstitutionally.

Mr. Cole further contends that the state courts' refusal to address the merits of the claims presented caused the claims to completely evade review through the entire process at the state level. It is entirely possible that this is because the state courts do not want to apply the standard of review Mr. Cole requested to be used. This standard of review, which is still appropriate, is strict scrutiny.

## STRICT SCRUTINY STANDARD OF REVIEW

The state has never contested Mr. Cole's request for a strict scrutiny standard of review as requested at all levels in the state courts in this proceeding, thus tacitly agreeing that it is the appropriate standard of review. As set forth in the Petition for a Writ of Habeas Corpus, the Opening Brief on appeal, and the Reply Brief on appeal, this strict scrutiny standard of review is appropriate as Mr., Cole's Petition for a Writ of Habeas Corpus challenges the constitutionality of Colorado's Sex Offender Lifetime Supervision Act of 1998 (hereafter the 1998 Act or SOLSA), §18-1.3-1001, et seq.

Under strict scrutiny, the state must establish that it has a compelling interest that justifies and necessitates the law in question; **City of Cleburne, Tex. V. Cleburne Living Center**, 105 S.Ct. 3249 (1985)(State laws which impinge on personal rights protected by the Constitution are subjected to strict scrutiny and will be sustained only if they are tailored to serve a compelling state interest); **American Constitutional Law Foundation v. Meyer**, 120 F.3d 1092 (10th Cir.1997)(under equal protection analysis, classifications that impinge upon exercise of fundamental rights are subject to most exacting scrutiny).

While it is without question that the state has a compelling interest in preventing sexual misconduct, it is also without question that the 1998 Act is not narrowly drawn to serve that interest. Strict scrutiny is appropriate at any time the challenged statute impacts a federal right; **Eaton v. Jarvis Products Corp.**, 965 F.2d 922 (10th Cir. 1992)(Under federal or Colorado equal protection analysis, level of scrutiny afforded statute depends on nature of interest involved; thus strict scrutiny is appropriate where "suspect class" or "fundamental right" is involved). See also **Evans v. Romer**, 854 P.2d 1270 (Colo.1993) cert denied, 114 S.Ct. 419 (1994)(Strict scrutiny is reserved for statutes or state constitutional amendments that discriminate against members of a traditionally suspect class ot that infringe on some fundamental constitutional right). Mr. Cole has claimed from the beginning that he is part of a "suspect class" and that his challenge to the 1998 Act impacts **all** his fundamental rights, and as Mr. Cole stated, also from the beginning, all his fundamental rights have been removed, essentially and effectively stripping him of his United States citizenship. One specific example of this is his 5th Amendment right not to incriminate himself. As the judge in **People v. McGuire**, 99CR235, 35(c) (Garfield County, Nov. 15, 2006), determined, the loss of that right is permanent and applies to **all** conduct, past, present, and future.

Additionally, not only must the state show that the 1998 Act is supported by a compelling government interest, they must show that it is narrowly drawn to achieve that interest in the least restrictive manner possible. See **In re Adoption of T.K.J.**, 931 P.2d 488,495 (Colo.App.1996). The state has not done this, nor have they shown that there is no less restrictive means to achieve serving the government interest. **United States v. Playboy Entertainment Group, Inc.**, 529 U.S. 803,816 (2000)(to survive strict scrutiny, there cannot be any less restrictive means to do effectuate the legislative purpose). Mr. Cole has suggested at least one less restrictive means to

effectuate the legislative purpose). Mr. Cole has suggested at least one less restrictive means to do so, with an exhibit to show that it was originally a judicial interpretation of the 1998 Act, and the state has not contested his suggestion or the exhibit. The problem with Mr. Cole's suggestion is that, while less restrictive, it still strips him of his fundamental rights and his United States citizenship.

As Mr. Cole stated in his Opening Brief to the Colorado Supreme Court, a less restrictive alternative being offered, even one with the problems it has, it becomes incumbent on the state to prove that the proposed alternative would fail to achieve it's goal; **United States v. Playboy Entertainment Group, Inc.**, 529 U.S. 803,816 (2000); **Students for Concealed Carry on Campus, LLC v. Regents of the University of Colorado**, Lexis 541 (2010 Colo. Apr. 15, 2010). The state has not done so and Mr. Cole maintains they cannot do so.

### CLAIM ONE: BILL OF ATTAINDER

Mr. Cole maintains that the statutes challenged, §18-1.3-1001 et seq., are an unconstitutional bill of attainder called a "bill of pains and penalties". The record, including the original Petition for Writ of Habeas Corpus, will show that it was challenged in detail as such. In it's required Answer Brief in the state Supreme Court, the state addressed only the "punishment without trial" aspect of a bill of attainder. Mr. Cole's claim, however, was based on the "civil death" aspect of a bill of attainder. As set forth in the original Petition, "attainder" is defined by Black's law Dictionary thus: "At common law, the act of extinguishing a person's civil rights when that person is sentenced to death or declared an outlaw for committing a felony or treason". Mr. Cole has shown that all his civil rights have been extinguished permanently by virtue of the fact that he was convicted of a felony. The state has failed to contest this claim.

The effect of a conviction for a Class 2,3, or 4 felony is a Class 1 felony sentence and permanent removal of all Mr. Cole's rightful and constitutionally protected civil rights-in short civil death, as Mr. Cole cannot so much as associate with family members without the state's permission, cannot travel even so short a distance as the next county without the state's permission (bringing to mind travel permits in Nazi Germany), cannot obtain private property without the state's permission, and cannot marry or even date without the state's approval of the other person. In truth, as noted by an attorney member of the SOMB, the 1998 Act is very scary and allows Colorado to act as George Orwell's "Big Brother" from the book "1984". Mr. Cole's fundamental civil rights have also been specifically impacted in the following ways:

## A: DUE PROCESS

For the sake of expediency, Mr. Cole will combine his procedural and substantive due process claims into one.

Mr. Cole's due process claims come mostly from the removal of due process from defendants by the Colorado legislature when it passed the 1998 Act. In 1967, the United States Supreme Court declared Colorado's sex offender law unconstitutional in **Specht v. Patterson**, 386 U.S. 605 (1967) due to the lack of due process protections. This resulted in the Sex Offender Act of 1968 (hereafter the 1968 Act), in which the missing due process protections were added to the law. This law was in effect for 30 years. Then in 1998, the Colorado Legislature extended the provisions of the 1968 Act, which had previously applied only to sexually violent predators, to every person convicted of a sex offense, removed the due process protections required by **Specht** and changed the "one day to life" indeterminate sentence to a "minimum of the presumptive range to life" indeterminate sentence, which required all Class 2,3, and 4 felony sex offenders to receive an indeterminate sentence. See **People v. Smith**, 29 P.3d

5

347 (Colo.App.2001)(wherein, in discussing the 1998 Act, the appellate court identifies the 1968 Act as "the previous version of the sex offender sentencing statute…").

The Supreme Court in **Specht** held that due process requires, among other things, the right to be confronted with witnesses against him, the right to cross-examine, and to offer evidence of his own, as well as the right to an individual determination of dangerousness.

The petitioner in **Specht** was convicted under one statute in Colorado that carried a maximum sentence of 10 years. He was not sentenced under that statute, but under the provisions of the 1968 Act to one day to life. Mr. Cole is in the exact same situation, finding himself convicted of, by the statute of conviction, a Class 3 felony, which carries a maximum sentence of 12 years. Like the petitioner in **Specht**, he was not sentenced under that statute, but under the provisions of the 1998 Act to 10 years to life.

The petitioner in **Specht** was given no hearing at which he was allowed to dispute the findings of the mental health professionals with his own, the court relying entirely on the reports of the examining psychiatrists and psychologists. The Supreme Court found that this violated the right of confrontation and the right of cross-examination. Like the petitioner in **Specht**, the sentencing court here relied entirely on the report of the lone mental health professional who examined him. This person was not required to be present at the sentencing hearing, thereby denying Mr. Cole the right of confrontation and cross-examination. If he had been required to attend the sentencing hearing and be subjected to cross-examination, Mr. Cole could have asked him about the over 20 instances in his report of statements made that were directly contradicted just a few pages later, blatant falsehoods in his report, and, in one instance where the written portion of the examination asked if Mr. Cole had ever been suspended from school for any reason. That question in the report suddenly changed to asking if Mr. Cole had ever been

suspended from school for sexual misconduct. Because the examiner was not required to submit to cross examination, all Mr. Cole could do was point out all the discrepancies to his attorney, who let it all go unremarked at sentencing. Like the petitioner in **Specht**, this lack of due process and rights of confrontation and cross-examination created immeasurable prejudice.

The petitioner in **Specht** was required to sit by and allow the judge to make a determination of dangerousness and he could not present any evidence to the contrary. Like this petitioner, Mr. Cole was not allowed to present evidence to disprove his danger to society. Unlike the petitioner in **Specht**, the finding of dangerousness in Mr. Cole's case was done by the legislature in the 1998 Act. See §18-1.3-1001, Legislative Declaration. This created an irrebuttable presumption, something not favored by the courts. This irrebuttable presumption is addressed in detail in the following pages. The United States supreme Court held in **Specht v. Patterson**, 386 U.S. 605 (1967), that "whether a person constitutes a danger to society is a finding of fact requiring a hearing". The State of Colorado used a legislative enactment to bypass that due process requirement.

Due process is also violated in the way sentencing is imposed and in the way the sentence is executed. The stated reasons for the severity of a Class 1 felony sentence of life imprisonment for Class 2, 3, and 4 felonies is no cure and 100% recidivism. See **Smith v. Doe**, 538 U.S. 84 (2003)("The risk of recidivism by sex offenders is frightening and high"); **People v. Harper**, 111 P.3d 482 (Colo.App.2004)(same). Mr. Cole presented exhibit after exhibit from Colorado DOC to the Federal justice Department to a report by the Human Rights Watch as well as several others showing these statements to be wrong. The state did not dispute the figures and data presented in these exhibits that shows that 3 out of 4 sex offenders do not reoffend, that the only crime with a lower recidivism rate is murder, and that the 1998 Act, after 12 years, has failed to

Have any effect at all on the crime rates or sentencing rates of sex offenders. DOC's own figures, in fact, show recidivism rates under 10% for sex offenders and recidivism rates for new sex offenses nearing 0, as shown in the exhibits to the original petition. In the face of these figures and the data supporting them, the state has shown no data proving their claims of "no cure" and "100% recidivism". The state has shown no justification for it's infringement of Mr. Cole's civil rights so extreme that he is effectively stripped of his United States citizenship, and they have offered no justification for the 1998 Act, and certainly none that will withstand strict scrutiny.

The purpose of the 1968 Act was to provide extended supervision and treatment of sexually violent predators. The 1998 Act, which is a later version of the 1968 Act, essentially does no more than require sexually violent predator sentencing for all sexual convictions without regard to the circumstances of the crime, the facts of each case, the level of violence (or lack thereof), whether the person is in fact a sexually violent predator, or, as in Mr. Cole's case, the complete lack of a victim. The state also has made a blanket determination of danger to society in spite of rulings of the U.S. Supreme Court, as in **Specht v. Patterson**, 386 U.S. 6605 (1968), that danger to society is a fact that must be determined by a court in a hearing on a case by case basis. They have also made their own determination of 100% recidivism based on media and politically driven hysteria, which has no studies or data to back the claim, disregarding study after study, including ones by the federal government and agencies of the State of Colorado, among others, showing the opposite to be true. Mr. Cole supplied many exhibits submitted with the original petition that proved his claims of low recidivism.

As noted on page 9, the Colorado legislature created an irrebuttable presumption when it created the 1998 Act concerning the danger to society presented by a person convicted of a

sexual crime.  The federal court in **Coleman v. Darden**, 595 F.2d 533 (10th Cir.1978) took note of **Vlandis v. Kline**, 412 U.S. 441 (1973) in finding that when a statute creates an irrebuttable presumption that, like dangerousness, is neither necessarily nor universally true, it is disfavored under both the 5th and 14th Amendments to the U.S. Constitution because of their failure to provide an opportunity for an individualized determination of relevant facts; accord **People in Interest of B.**, 651 P.2d 1213 (Colo.1982). See also **Heiner v. Donnan**, 285 U.S. 312 at 329 (1932)("The court has held more than once that a statute creating a presumption which operates to deny a fair opportunity to rebut it violates the due process clause of the 14th Amendment").

The U.S. Supreme Court in **Specht v. Patterson**, 386 U.S. 605 (1968) held that dangerousness is a fact that must be determined in a hearing by the trier of fact on an individualized basis.  The 1998 Act ignores this requirement of due process.

### B: EQUAL PROTECTION

Mr. Cole's equal protection claim was also ignored by the state courts.  As pointed out in the original Petition, the statutes challenged, §18-1.3-1001 et seq., have no presumption of constitutionality in Colorado because "Any presumption of constitutionality of a statute ends when a statutory classification affects a fundamental right or a suspect class"; **Wills v. State**, 821 P.2d 866 (Colo.App.1991).  Mr. Cole now has no fundamental rights in or out of prison, thanks to the 1998 Act.  This effectively strips him of his United States citizenship.  No statute that operates to do this can be presumed to be constitutional.

In addition, §18-1-102(1) sets out 3 purposes of Colorado law, none of which are provided for in Mr. Cole's crime of conviction nor in the 1998 Act.  As stated in the original Petition, the first purpose, fair warning to all persons of the nature of the proscribed conduct and the penalties therefore, §18-1-102(1)(a), was not accorded to Mr. Cole.

The statute he was charged under clearly prohibits enticing or attempting to entice any child under 15 years of age. The statute makes clear that a child victim is required by the use of the words at the end of §18-3-305(1), "It is not necessary to a prosecution for attempt under this subsection (1) that the child have perceived the defendant's act of enticement". There is no clear, fair warning nor warning of any kind, that the conduct proscribed extends to: a) adults on the internet where any person can claim to be anything; b) in adult areas of the internet where age related role play is prevalent; and c) where every person in the adult area is required to certify that they are over 18 years of age. This certification is a practice that the U.S. Supreme Court has ruled is an adequate device to filter out underage users. There is also no fair warning that all violations of the statute are mandated to be punished by lifetime imprisonment.

The second purpose, §18-1-102(1)(c) is the differentiation on reasonable grounds of the more serious from the less serious criminal conduct. Mr. Cole was convicted of the attempt portion of §18-3-305. His conduct involved no children, there is no victim of record, and in fact the only other people involved in his case was the police. Yet he was given the same life sentence as would be given to a serial rapist or the most unrepentant child molester with dozens of victims. The only difference, the date of parole eligibility, is meaningless, since the parole board is not required to ever parole Mr. Cole and at present there is a de facto "no parole" policy in place in Colorado for all people convicted of sexual misconduct.

The third purpose, §18-1-102(1)(c), is the prescription of penalties that are proportionate to the seriousness of the offense. The Colorado Court of Appeals, in **People v. Becker**, 55 P.3d 246 (Colo.App.2002), has acknowledged that a sentence under the 1998 Act is in fact a sentence to life imprisonment, in direct opposition to legislative intent. Life sentences are, pursuant to the presumptive guidelines, only for Class 1 felonies, such as First Degree Murder and First Degree

Kidnapping. The Colorado legislature stated in §18-1.3-1001 that lifetime incarceration is unacceptable. This is directly in opposition to the way the CDOC executes sentences under the 1998 Act. The 19998 Act's sponsor, Rep. Norma Anderson, is also on record in committee hearings in 1998 stating that the 1998 Act was not intended to lengthen incarceration beyond the presumptive range, But to extend parole and supervision. This was acknowledged by the state Supreme Court in **People v. Vensor**, 151 P.3d 1274 (Colo.2007).

A life sentence is also not proportionate to the seriousness of the offense in this case. Compare Mr. Cole's Class 3 conviction, for which the presumptive guidelines requires a sentence to imprisonment for a maximum of 12 years with his Class 1 felony sentence of life in prison for conduct that involved no children and recorded no victims. See also **United States v. Butters**, 267 Fed. Appx. 773 at 778 (10th Cir.2008)(10-15 years accurately reflects the serious nature of the offense and is not "inconsistent with other state and federal guidelines for child sex crimes"). As stated above, Mr. Cole's sentence is the same as the worst serial rapist or serial child molester would receive, except for the (mostly meaningless) parole eligibility date.

The 1998 Act also violates equal protection because the goal of the 1998 Act is treatment, yet the Act does not provide those with sexual misconduct convictions with the same procedural safeguards afforded persons civilly committed under §§27-10-101 to 27-10-129 in spite of the fact that once a person has served his minimum sentence, pursuant to legislative intent, the state literally has no more interest in punishment. This means the convicted person is left serving a penally imposed civil commitment in prison.

Finally, Mr. Cole's Exhibit 14 in his original Petition proved conclusively that he has been treated differently than other similarly situated individuals. Mr. Cole was convicted of the attempt portion of the enticement statute and received a life sentence. Exhibit 14 shows that in

Fiscal Year 2002-03, the year Mr. Cole entered prison, one person was sentenced to prison for Felony 3 Enticement of a Child. This would be the completed, substantive crime. There was also one Class 4 felony admission for a violation of §18-3-305, the same statute Mr. Cole was convicted of, which also covers attempted enticement. That person received a determinate sentence in spite of the requirements of the 1998 Act. There were also 2 others convicted of the attempt portion of §18-3-305 and sentenced to CDOC. This is the exact conviction Mr. Cole was given a Class 3 felony conviction with a Class 1 felony sentence for, yet these two individuals received Class 5 felony determinate sentences, which have a maximum of 3 years in prison. As Mr. Cole stated in the original Petition in the state courts, this is an equal protection violation of the first magnitude.

The original Petition also showed proof by way of Exhibit 14 that from the effective date of the 1998 Act through the 2002-03 Fiscal year, 2081 defendants were sentenced to prison for a sex offense, yet only 454 (approximately 22% received an indeterminate life sentence. Although an indeterminate sentence was mandated by law for all of these persons with sexual misconduct convictions, 78% did not receive the mandated sentence. Equal protection would require a different result. See **People v. Garberding**, 787 P.2d 154 (Colo.1990)(Equal protection… required minimum and maximum sentences imposed by statute, not judge, to be the same for all persons charged with same or similar offense).

## C. CRUEL AND UNUSUAL PUNISHMENT

The prohibition against cruel and unusual punishment includes a sentence that is disproportionate to the crime committed. **Solem v. Helm**, 463 U.S. 277 (1983); **People v. Gaskins**, 825 P.2d 30 (Colo.1992). The sentence imposed in this case, a Class 1 felony sentence of life in prison with a (mostly meaningless) parole eligibility date after service of 10 years is

Case No. 1:12-cv-00677-LTB    Document 1    filed 03/16/12    USDC Colorado    pg 18 of 29

is grossly disproportionate to the crime of conviction, since, as noted throughout the process, Mr. Cole's conviction was of the attempt portion of the statute, no children were ever involved in this case and there are no victims of record. See **United States v. Butters**, 267 Fed.Appx. 773 at 778 (10th Cir.2008)(10-15 years accurately reflects the serious nature of the offense and is not "inconsistent with other state and federal guidelines for child sex crimes"). Since 10-15 years has been determined to be an accurate penalty range for a conviction of the substantive crime, it follows that a sentence of life in prison for a conviction of attempt, in which there is no victim of record and for which the transcripts show no potential victims existed is grossly disproportionate and so is unconstitutional as cruel and unusual punishment.

The state will point out that Mr. Cole's sentence is to lifetime supervision, playing on words to lead a court to believe that the sentence imposed in this case is not life in prison. This is disproven by **People v. Becker**, 55 P.3d 246 (Colo.App.2002) in which the Colorado Court of Appeals acknowledged that sentences under the 1998 Act are sentences to life in prison. This is underscored by the fact that the Parole Board is not required to ever parole any person that was sentenced under the 1998 Act and is not required to ever discharge anyone sentenced under the 1998 Act.

"Supervision" is not defined anywhere in Colorado law and this allows the state, CDOC and the SOTMP to define supervision as imprisonment. Nowhere else in the country has Mr. Cole found this definition of "supervision". Elsewhere, including in the federal system, supervision is a form of release separate from prison. See, e.g., Texas Code of Criminal Procedures 42.12 §2(c), defining "parole" to mean release of the prisoner; and (d), "mandatory supervision" to mean the release of the prisoner, but not on parole.

Finally, although Mr. Cole has not experienced the SVP "treatment" that is the sole treatment available to prisoners, he included 6 exhibits in his original Petition, including one by a government agency and two by an independent organization, as well as three affidavits, that detail the mental and emotional abuse those in treatment are subjected to.

The Colorado state courts refused to act on all this evidence of cruel and unusual punishment, turning a blind eye to Mr. Cole's Petition rather than hold a hearing wherein he might be able to present even more evidence and force the state to face the hard truth that the 1998 Act is not only a failure, but is unconstitutional as well.

## D. SEPARATION OF POWERS

Sentencing in criminal cases is the function of the judiciary. It has the exclusive power to impose sentences. The General Assembly has the power to prescribe punishment for crimes and limit the judiciary's sentencing authority and discretion.

The parole board is not part of the judicial branch, but is an agent of the executive branch. It is not their duty to determine the length of an inmate's imprisonment nor to determine when or whether that sentence can ever be executed. Yet that is exactly the job the legislature has empowered them to perform. The court no longer has the authority or discretion in sentencing that they had before the 1998 Act became law. They must impose a Class 1 felony life sentence for all Class 2, 3, and 4 sexual crimes. These life sentences carry a parole eligibility date based on the presumptive guidelines that for any other kind of crime would be the date a person must be released to parole on.

When the person becomes eligible for a parole hearing, the parole board assumes the duties of the court. Under the 1998 Act, it is the Parole Board's duty to determine the length of incarceration and they are not required to ever release anyone convicted of a sex crime sentenced

under the 1998 Act. The court has been removed from setting the upper limit of the period of incarceration.

If the parole board were to grant parole, which is not likely, they also determine when a person has completed his sentence and they are not required to ever make that determination. The court has been completely removed from setting the upper limit of a sentence the state claims to be a Class 2, 3, or 4 felony.

At the same time, §18-1.3-1006(1)(a) requires the parole board to "determine whether the sex offender has successfully progressed in treatment and would not impose an undue threat to the community if released...and whether there is a strong and reasonable probability that the person will not thereafter violate the law". This statute is in direct violation of the U.S. Supreme Court's holding in **Specht v. Patterson**, 386 U.S. 605 (1967) that the issue of danger to the community is a question of fact requiring 1) a hearing; 2) before a court. That the parole board has been given this duty is a blatant violation of the separation of powers doctrine. Although it is immaterial to the violation, it is noteworthy that the parole board does not even do as the statute requires and make such determination. Instead those convicted of sex crimes receive the same parole hearing as any other inmate before them.

As explained in the original Petition, unanswered by the state, the case of **Trueblood v. Tinsley**, 366 P.2d 655 (Colo.1961) is no longer applicable to indeterminate sentences. In that case, the Colorado Supreme Court determined that the judiciary did have sole sentencing authority over the indeterminate sentence of 1 day to life. The Colorado General Assembly had committed to the judiciary the decision of whether a person with a sexual conviction would receive a determinate sentence or an indeterminate sentence using the proper procedural

15

safeguards. Such authority was removed from the judiciary by the 1998 Act and the courts are now required to impose a Class 1 felony sentence of life in prison for Class, 3, and 4 felonies.

As detailed in the original Petition and unanswered by the state, the structure of the 1998 Act violates the doctrine of separation of powers in that it unconstitutionally empowers an arm of the legislative branch, the parole board, to encroach on functions reserved to the judicial and legislative branches.

## E. RIGHT TO REMAIN SILENT

Mr. Cole pled not guilty in his case, has contested his conviction in appeals and postconviction motions and maintains his innocence. He has a constitutional right to do exactly that under both the United States and Colorado State Constitutions. Under the 1998 Act and the standards of the SOMB, Mr. Cole has been subjected to greater punishment for exercising his constitutional right to remain silent and for protesting his guilt because the CDOC will not offer sex treatment to an individual unless he admits guilt. See, e.g., **People v. McGuirt**, 99CR235, 35(c) ruling (Garfield County, Nov. 15, 2006), pages 11 and 23. Sex offense specific treatment is required under the 1998 Act and constitutionally mandated. The Department's refusal to treat any person who does not admit guilt violates their constitutional right to remain silent under both the United States and Colorado State Constitutions, as well as the 1998 Act itself. As the court in McGuirt, supra, noted on page 6, this loss of the 5th Amendment right applies to all conduct, past and future, and is for life. This is the exact definition of a bill of pains and penalties, forbidden by the Bill of Attainder Clause of the United States and Colorado State Constitutions.

The 5th Amendment, made applicable to the states through the 14th Amendment, provides that "no person shall be compelled in any criminal case to be a witness against himself". See also Colorado Constitution, Article II, §16. "The essence of this basic constitutional principle is

the requirement that the state which proposes to convict and punish an individual produce the evidence against him by the independent labor of it's officers"; **Estelle v. Smith**, 451 U.S. 454, 462 (1981)(quoting **Columbe v. Connecticut**, 367 U.S. 568, 581-582 (1961)). Yet, as shown by Exhibit 23, therapist Responsibilities, paragraph 5, any inculpatory statements made to SOMB therapists are reported to police. As noted earlier, in Exhibit 5, Independent Sunset Report on Colorado's Sex Offender Management Board, page 6, at least one of the purposes of treatment in CDOC is interrogation.

The United States Supreme Court has held that, "the availability of the [5th Amendment] privilege does not turn upon the type of proceeding in which it's protection is evoked, but upon the nature of the statement or admission and the exposure which it invites". **Estelle**, supra, 451 U.S. at 462 (quoting **In re Gault**, 387 U.S. 1, 14 (1967)).

Punishment cannot be augmented because of a person's refusal to admit guilt, even if the admission refers to a crime for which the person was convicted; **Thomas v. United States**, 368 F.2d 941 (5th Cir.1966); **Scott v. United States**, 419 F.2d 264 (D.C. Cir.1969); **United States v. Wright**, 533 F.2d 214 (5th Cir.1976).

Since punishment cannot be augmented for a defendant's failure to admit guilt as a basis for probation revocation or parole denial, as has happened here, the 1998 Act must be found to be an unconstitutional bill of attainder. **State v. Imlay**, 813 P.2d 979, 984 (Mont.1991); **Gilfillen v. State**, 528 N.E.2d 821 (Ind.1991); **Mace v. Amstov**, 756 F.Supp. 847 (D.Vt.1991).

## G. RIGHT TO MEANINGFUL APPEAL

Both the United States and the Colorado State Constitutions guarantee an individual the right to appeal both his conviction and his sentence. The 1998 Act forced Mr. Cole to choose between appealing his conviction or to make mandatory statements regarding the alleged offense

in order to be able to access constitutionally mandated treatment; **Beebe v. Heil**, 333 F.Supp.2d 1011 (D.Colo.2004), so he could be considered for release from CDOC. Mr. Cole cannot be forced to choose between constitutional rights, yet that is exactly what CDOC and the SOMB has done to him. If Mr. Cole had chosen treatment and continued his efforts to contest his conviction, any inculpatory statements made by him in an effort to obtain his freedom through treatment would have been used against him, thereby nullifying his right to appeal.

Additionally, more than a decade after his conviction, Mr. Cole has had no meaningful appellate review of his conviction or sentence. Sentences for non-sexual convictions are governed, generally, by §18-1.3-406, which provides for determinate sentences within a given range for each class of felony. Upon conviction and sentencing for a non-sexual case, an individual is entitled to appeal the length of the sentence imposed on the grounds that it is illegal or resulted from an abuse of judicial discretion. Because any sentence imposed under the 1998 Act is an indeterminate sentence of life in prison, there can be no meaningful appellate review of the length of a sentence for a felony sexual offense. Even if the individual wins his appeal, any new sentence is still an indeterminate sentence of life in prison. This absence of appellate review violates both due process and the right to appeal.

## H. SENTENCE IS IMPOSSIBLE TO SERVE

The sentence imposed on Mr. Cole by the court of 10 years to life is impossible to complete. This is because individuals sentenced to CDOC are not allowed to serve a sentence that complies with the legislative mandates of §18-1.3-1001, et seq. This turns any sentence pursuant to these statutes into a life sentence without parole. Althouth at some point all people with sexual misconduct convictions do reach a parole eligibility date, as the evidence shows, and

will be referred to below, there is a de facto "no-parole" policy in place for all sexual convictions in the State of Colorado.

Mr. Cole has identified 3 main areas in which the sentence imposed on those with sexual convictions through the 1998 Act and how it is applied by CDOC, SOMB and the Parole Board prove the 1998 Act is an unconstitutional bill of attainder and is impossible to complete. Those areas are:

1) THERE IS NO MEANINGFUL TREATMENT

Section 18-1.3-1004(3) directs that "Each sex offender sentenced pursuant to this section shall be required to undergo treatment to the extent appropriate pursuant to §16-11.7-105". Treatment is thus mandated by the legislature to be appropriate to the crime of conviction. The CDOC and SOMB has ignored this mandate and determined that, regardless of the offense of conviction, the level of force used or not used, or any other factor, the only appropriate treatment is the confrontational treatment given to the SVP. This means that Mr. Cole, who was convicted of the attempt portion of §18-3-305, was not involved in any conduct involving children, and has no victim of record will be subjected to the same treatment protocols as the person adjudged an SVP. The only difference is the length of treatment, which is based on length of sentence. This means Mr. Cole, convicted of an attempt with no victims, because he went to trial, will be required to undertake much more treatment than a person who committed the same act or even one who forcibly raped a child, but plea bargained to a Class 4 felony conviction and so has a much smaller minimum sentence.

The treatment program is deliberately made to be open ended, which means it cannot be completed; see Exhibit 16, Sex Offender's Treatment Program Draft; Exhibit 4, The 4th Annual Report by Et Alia, pages 15-18. The treatment program, which proponents claim to be "state of

the art", "top of the line" and "cutting edge" has failed completely, and many have acknowledged this failure. See Exhibit 2, The 1st Annual Report by Et Alia, in it's entirety, making note of the chart on page 27, showing that in 2000 and 2002, the nationwide average success rate was 59-64%, while in Colorado it was 3%; Exhibit 3, The 2nd Annual Report by Et Alia, in it's entirety, noting the same dismal success rate of 3%, and the chart on page 9; Exhibit 4, The 4th Annual report by Et Alia, in it's entirety and noting pages 1-3 discussing the problems and results of SOMB's open ended treatment program; and Exhibit 7, Judge Dubofsky's Article From The Boulder Bar Online Newsletter.

In particular, the SOMB's "top of the line", "state of the art", "cutting edge" program can trace it's failure to one thing: the person who conceived it was not qualified to create such a program. See Exhibit 17, Peggy Heil's Resume, which shows 2 years experience helping to develop and coordinate a counseling program designed to help sexual assault **victims**. Prior to her appointment as Director of SOTMP, she had absolutely **no** experience treating sexual assault offenders. The truth is, the "cutting edge", "top of the line", "state of the art" program she developed, which has not been substantially altered in any way since it's inception, was a bastardized conglomeration using bits and pieces of studies that were outdated when she pieced them together.

These shortcomings are made very clear in Exhibit 20, Donald Beierle's Civil Trial Transcripts, in which a highly respected doctor, Sheila Deitz, an expert in the field of sex offenses and who was certified by the court to be an expert witness on page 273, lines 21-24 details problems with the SOMB's program. She refused to sit on the SOMB Board when she was asked to because, she said on page 272, lines 13-16, she did not see the level of care she considered to be a standard of care, and on pages 276-277, she discusses her concerns over the

"one size fits all" treatment of SOMB and the fact of their, at the time of her testimony, 100% failure rate.  The result is a program used entirely for shaming, punishment, interrogation for law enforcement, and a means to keep inmates in prison far after they have served the punishment portion of their sentence.  See Exhibit 5, Independent Sunset Report by Et Alia, page 6 ("Regardless of whether therapy works, it's role...is...to get inside the offender's head and obtain the method of operation information..."); Exhibit 8, Affidavit of Dennis Valenzuela; and especially Exhibit 9, Affidavit of David Crosby.

 2) IT WAS THE INTENT OF THE LEGISLATURE THAT THE LENGTH OF INCARCERATION NOT BE INCREASED

See **Vensor v. People**, 151 P.3d 1274 (Colo.2007), wherein the Colorado Supreme Court notes the testimony of the 1998 Act's sponsor, Rep. Norma Anderson, who said three times before committees that the Act was not intended to lengthen incarceration time.  As evidenced by comments of legislators at the time, in Exhibit 21, The Nov. 13, 2000 Denver Post Article, the purpose of the 1998 Act was to lengthen **parole** and to, as stated in §18-1.3-1001, provide for treatment and **supervision** for an indeterminate time up to an offender's natural life.  This was promptly ignored by the CDOC and SOMB, who immediately decided the 1998 Act meant life in prison and instituted a de facto "no parole" policy against a group of offenders who the true figures show do not repeat their crimes; Exhibit 6, Bureau of Justice Special Report; and Exhibit 18, Human Rights Report (showing that 3 out of 4 of those with sexual misconduct crimes do not reoffend).  See also Exhibit 22, The Feb. 28, 2005 Denver Post Article.

 3) THE CDOC HAS NEVER IMPLEMENTED THE ACT

Because of this, they have voided the intent of the legislature that offenders be subjected, not to longer prison terms, but to increased treatment and supervision.  See Exhibit 19, Judge Shinn's Interpretation of the Incarceration Portion of Sentences Pursuant To §18-1.3-1001, et

seq., WHEREIN Judge Shinn explains that "indeterminate" refers to parole only. Every statute that concerns those with sexual misconduct convictions, such as the community notification statute for SVPs, §16-13-903, deals with the supervision of people that have been convicted of sex crimes in the community, thus emphasizing the intent of the legislature set forth in §18-1.3-1001, that lifetime incarceration is unacceptable and a waste of both taxpayer dollars and human potential. The CDOC and SOMB has never and at present cannot comply with the mandate of the legislature. In the 9th Annual Report by the CDOC, the Dept. of Public Safety and the State Judicial Dept., on pages 34-35, is an admission that it was 5 years, in 2003, before the first step toward meeting that mandate was taken, and that at that time, 7 years after that first step, nothing more had been done. At the time of the report, it was also admitted that the CDOC and SOMB is not complying with the legislative mandate, and apparently has no plans to do so. If the CDOC and the SOMB will not or cannot comply with the requirements of the law, then that law is void and any sentences imposed under it can be no more than a bill of attainder, as it is the means by which Mr. Cole has been stripped of his constitutional rights for the rest of his life.

Finally, the sentence is impossible because, as the true facts and data show in Exhibit after Exhibit, the materials, facts and data given to the General Assembly and used by them as the basis for the 1998 Act, were false, and "If a statute purporting to have been enacted to protect the public health, morals, safety, or common welfare, has no real or substantial relation to these objects, and for that reason is a clear invasion of the constitutional freedom of the people to use, enjoy, or dispose of their property without unreasonable governmental interference, the courts will declare it void"; **Colorado Antidiscrimination Comm. v. Case**, 380 P.2d 34 (Colo.1963).

## THE SENTENCE IS BEING EXECUTED ILLEGALLY

Alternatively, if the statutes herein challenged are valid and not a bill of attainder, Mr. Cole's sentence is being executed illegally, and so is void, in which case he must be sentenced to a determinate sentence of no more than 10 years and, because he has served in excess of that time, he must be released.

The SOMB does not have the ability to provide offense specific treatment as required by the legislature. Offense specific treatment is mandated and pursuant to **Beebe v. Heil**, 333 F.Supp.2d 1011 (D.Colo.2004), that mandate creates a liberty interest for Mr. Cole in offense specific treatment that he cannot receive in CDOC. In **Leamer v. Fauver,**, 288 F.3d 532 (3rd Cir.2002), the Federal Courts found that such a legislative mandate creates an affirmative duty on the part of the Executive Director of the DOC to treat all those with sexual misconduct convictions, regardless of their ability to fit into any particular modality. This means all those individuals must be treated and a treatment plan was required to be formulated which was adaptable to fit each person and be offense specific, not a plan such as CDOC has done, of one modality which all must conform to, regardless of their offense.

In this regard, the 1998 Act is identical to the program at issue in **Leamer**, in which the court noted, at 545, that "since treatment rather than punishment was the goal of the Act, a lack of treatment could not 'be justified by distinguishing his condition because he has been sentenced for a criminal offense and not been adjudicated insane or mentally incompetent'". The CDOC and SOMB cannot provide offense specific treatment, and cannot justify their failure to provide mandated offense specific treatment in order to make the 1998 Act a means of keeping those sentenced under it in prison of life without parole, Mr. Cole's sentence is being executed illegally and is therefore void.

After the ruling in **Beebe v. Heil**, 333 F.Supp.2d 1011 (D.Colo.2004), there has been no

question that those with sexual misconduct convictions are constitutionally entitled to treatment. This treatment cannot be based on a reasonable cost and tome basis. It must be provided in such a way that every person will have a reasonable chance of being paroled into the community when he has served his minimum sentence. The CDOC and SOMB has no desire to do this and has made no effort to do so, forcing Mr. Cole to choose between SVP treatment or contesting his conviction or an attempted crime against children in which no children were ever involved and no victims of his crime of conviction were ever recorded. As in **Ohlinger v. Watson**, 652 F.2d 775 (9th Cir.1980), Mr. Cole has never requested the best possible treatment and even now has discussed nothing more than the mandated **offense specific** treatment required by the legislature. As the court ruled in **Ohlinger**, Mr. Cole is entitled to just that treatment and lack of funds, staff, facilities, or the proper treatment regimen cannot justify the state's failure to provide this offense specific treatment. Because the CDOC and SOMB cannot institute and has no plans to institute an offense specific treatment modality as constitutionally required and has made no effort to place Mr. Cole where he can access such offense specific treatment, inside or outside the facilities of the CDOC, Mr. Cole's sentence is being executed illegally and is thus void, requiring his release.

## CONCLUSION

Because, as shown above, §18-1.3-1001, et seq., is a bill of attainder in violation of both the United States and the Colorado State Constitutions, Wade Cole, pro se, asks this Court to declare the Colorado Sex Offenders Lifetime Supervision Act of 1998 void and order his immediate release, as he has served in excess of his minimum 10 year sentence, and to issue any other orders the law and justice may require.